D. A. MOREY v. ELMER LAIRD, Appellant.

**Double Agency.**  An agent who acts for two principals is required to exercise the utmost good faith to each, and, if he cannot do so, he should at once end the agency.

**Settlement: CONSIDERATION.**  A note given in settlement of claims of doubtful validity is valid, if the maker had knowledge of all the facts affecting their validity at the time he executed it.

**Evidence.**  Where plaintiff filed a verified reply to an answer, he is presumed to have known the contents of the reply, and of the answer to which it was directed; and hence the question asked him on cross-examination, if he knew the contents of the answer when he verified his reply denying it, is immaterial.

**Directed Verdict.**  Where a note was given in settlement of disputed claims, a direction of a verdict in favor of the payee cannot be sustained, unless the facts essential to make the note valid are so apparent from the evidence that reasonable men could not differ as to the facts it established.

RULE APPLIED. Defendant employed plaintiff as his agent to exchange his farm at forty-five dollars per acre for the business of a firm, which the firm agreed to do, at the actual cost of their stock, charging nothing for good will. Plaintiff falsely informed the defendant that the firm would not trade unless defendant would give five hundred dollars for the good will of their business and one member of the firm testified that plaintiff informed them that defendant wanted fifty dollars per acre for the farm. The exchange was made on this basis and defendant executed his note to plaintiff in settlement of his claim in ignorance of the fact that the firm had offered to exchange for the farm at forty-five dollars, without anything for the good will, etc. *Hel*, that the evidence, if believed, constituted a defense to the note, and should have been left to the jury, and that a verdict directed for plaintiff was error.

*Appeal from Bremer District Court.*—HON. J. F. CLYDE, Judge.

WEDNESDAY, JANUARY 18, 1899.

ACTION at law to recover an amount alleged to be due on a promissory note. A jury was impaneled, and, after the evidence had been fully submitted, a verdict for the plaintiff was returned by direction of the court; and from the judgmen. rendered thereon the defendant appeals.—*Reversed.*

*G. W. Ruddick* and *D. A. Long* for appellants.

*E. L. Smalley* and *Gibson & Dawson* for appellee.

ROBINSON, C. J.—The note in suit was given by the plaintiff to the defendant on the twenty-seventh day of February, 1896, for one thousand one hundred and seventy-five dollars. The sum of four hundred and six dollars and sixty-five cents was paid thereon September 8, 1896. The plaintiff demands judgment for the amount of the note, after deducting therefrom the payment made. The defendant admits the making of the note, and pleads as a defense in substance as follows: That in January, 1896, he was the owner of a farm of two hundred and five acres of land in Bremer county; that he employed the plaintiff as agent to negotiate for him an

exchange of his farm for the business of Donlon & Saylor, of Waverly; that the business of that firm was the buying and selling of wagons, buggies, and farm machinery; that by the contract of agency the farm was to be exchanged at the price of forty-five dollars per acre for the cost price in Waverly of the stock of the firm, and the plaintiff was to receive as compensation what he could get for the farm in excess of forty-five dollars per acre; that thereafter the plaintiff represented that the firm would not allow more for the farm than the price specified, and that, relying upon that representation, the defendant agreed to pay the plaintiff one hundred dollars to effect a trade of the farm at that price; that at the time the plaintiff, without the knowledge of the defendant, was also acting as the agent of the firm, and had been authorized to exchange its stock in trade, at its cost price in Waverly, without any charge for good will, for the farm at forty-five dollars per acre; that the plaintiff falsely represented to the firm that the defendant would not trade his farm at less than fifty dollars per acre, and falsely represented to the defendant that the firm would not trade its stock at its cost in Waverly for the farm at forty-five dollars, but in addition must have five hundred dollars for the good will of the business; that the defendant, relying upon such representations, permitted the plaintiff to make the trade on the basis of fifty dollars per acre for the land, and the cost of the stock in Waverly, and five hundred dollars in addition for the good will. The defendant pleads further that the plaintiff represented to him that the commission business of the J. I. Case Threshing-Machine Company at Waverly, which had been in the hands of Donlon & Saylor, was very profitable; that the plaintiff had great influence with the company, and would use it to procure the business for the defendant for two hundred and fifty dollars, although he had been offered that sum for his influence by one Garner, then doing a commission business in Waverly; that the defendant relied upon said representations, and agreed to

pay the plaintiff the sum stated for his influence, but that the representations were false, and were known to the plaintiff to be false when made. The defendant further states that after the trade with Donlon & Saylor was completed the plaintiff presented his claim against the defendant for one hundred dollars for services rendered in making the trade, for one thousand and twenty-five dollars for the amount received for the farm in excess of forty-five dollars per acre, and for two hundred and fifty dollars for influence used to procure the business of the threshing machine company; that the defendant did not at that time have any knowledge that Donlon & Saylor had offered its property, without charge for good will, in exchange for the land at forty-five dollars per acre, and in ignorance of the fact paid the plaintiff two hundred dollars, and made the note in suit; that by reason of the facts stated the note is wholly without consideration. The defendant further states that the plaintiff transferred the note, before due, and in fraud of the rights of the defendant, to a bank, to secure the payment of four hundred dollars and interest, and that the defendant was compelled to pay to the bank on the note four hundred and six dollars and sixty-five cents. Judgment is asked against the plaintiff for that sum, and for the two hundred dollars paid, with interest. The plaintiff, in reply, states that the note in suit was given after an adjustment of all the matters alleged in the answer, and in settlement of them. The verdict and judgment were for the full amount which appeared to be due on the note.

I. The reply contained a general denial, and was verified. The plaintiff was asked on cross-examination if he knew when he signed and verified the reply that the answer contained certain statements, which the evidence showed to be true, but which were denied by the reply. The purpose of the questions was to show that the witness had made statements, when not a witness, in conflict with his testimony, but objections to the question

were sustained. The plaintiff, in the absence of a show-
ing to the contrary, is presumed to have known the contents
of the reply which he verified, and of the answer to which
it was directed, and both were formally introduced in
evidence. If the answers sought had been permitted, they
would merely have confirmed the presumption which then
existed, and were immaterial. The court did not err in
excluding them.

II. The note in suit and a check for two hundred
dollars were given, after the exchange in question had been
effected, in settlement of claims made by the plaintiff which
are set out in the answer. These claims were dis-
puted by the defendant before and at the time the
note was given, and if the defendant then knew all
material facts which affected the validity of the claim, and
the settlement was fairly made, the note is valid, even though
the claims for which it was given were of doubtful validity.
*Rowe v. Barnes,* 101 Iowa, 302; *French v. French,* 84 Iowa,
655; *Keefe v. Vogle,* 36 Iowa, 87. But, to sustain
the ruling of the district court in directing a verdict,
the facts essential to make the note valid must be so
apparent from the evidence that reasonable men could not
differ as to the facts which it established. *McLeod v. Rail-
way Co.,* 104 Iowa, 139, and authorities therein cited; 6
Enc. Pl. & Prac. 683. The evidence for the plaintiff, if not
disputed, would show beyond question that the note is valid,
but we must examine the answer and testimony of the defend-
ant to ascertain whether there was a dispute. The answer
admits the making of the note, and avers that it was
given in payment of the claim in controversy. The testimony
of Laird is in some respects self-contradictory, but tends
strongly to sustain the alleged fraud in the transaction
involved in the double agency. The defendant testified,
respecting the settlement had when the note was given, that
he disputed the claim of the plaintiff for the two hun-
dred and fifty dollar item, alleging that Garner had not

offered him that sum for the commission business; that the plaintiff then denied that he had said Garner had made that offer; and that, after some discussion in regard to the matter, the defendant "was finally willing to give him the $250, and also the one hundred dollars. There was no dispute particularly as to the $100." The testimony of the defendant shows that at the time the note was signed he learned that the plaintiff had, to some extent, acted in the transaction as the agent of Donlon & Saylor, but he did not know the particulars of the agency. In making the exchange, Donlon & Saylor received the cost of their stock in Waverly, and five hundred dollars in addition for the good will of the business, and the defendant was allowed fifty dollars per acre for his land. Saylor testified that during the latter part of the negotiations, which were carried on through Morey, the firm proposed to Morey to take the land at forty-five dollars per acre in exchange for the stock at its cost in Waverly, without any allowance for good will, but that Morey answered that the defendant wanted fifty dollars an acre, and that the offer would be useless. The defendant states positively and explicitly that he did not, when he transferred his land to Donlon & Saylor, nor when the note was made, have any knowledge of that offer. If the testimony of Saylor and the defendant respecting the offer was true,—and for the purpose of this appeal we must presume that it was,—Morey was guilty of a gross violation of his duty to both of his principals, for the plaintiff admits that he was authorized to exchange the land at forty-five dollars per acre. If he was guilty of the misconduct charged, it resulted in causing Donlon & Saylor to lose one thousand and twenty-five dollars, and the defendant five hundred dollars. The plaintiff denies the alleged misconduct, but we fail to discover any admission by the defendant, or any testimony on his part, which shows that he knew of the offer. The fact that the plaintiff acted as the agent of each party to the transaction did not relieve him of the duty of loyalty to

each principal, to the extent of his employment. It is said in Mechem Agency, section 454, that "loyalty to his trust is the first duty which the agent owes to his principal. Without it perfect relation cannot exist;" and in section 455, that the agent must not put himself into such relations that his interests become antagonistic to those of his principal. "The agent will not be permitted to serve two masters, without the intelligent consent of both." See, also, Mechem Agency, section 67. It is the duty of the agent to inform his principal of facts material to his interests which are known to the agent. 1 Am. & Eng. Enc. Law (2d ed.), 1069. These are elementary rules. An agent who acts for two principals is required to exercise the utmost good faith to each, and, if he finds that he cannot do so, he should at once take steps to end the agency. If the testimony of the defendant is credible, he did not know that the plaintiff was acting for Donlon & Saylor until after the exchange was made, and at the time the note was signed; and there was nothing in the information he admits having received at that time which should have charged him with knowledge of the alleged breach of trust. He still had the right to presume, as against the plaintiff, that he had been faithful in the discharge of his duties. If the defendant is correct in his testimony, there was no consideration for the note to an amount greater than the sum apparently due on it, and he is entitled to recover on his counterclaim. The evidence required that the issues presented by the pleadings be submitted to the jury. The district court, therefore, erred in directing a verdict for the plaintiff, and its judgment is REVERSED.