(Hamilton Co., O., Common Pleas.)
April Term, 1897.

ADA B. BLOOMER v. MARY B. CIST et al.

1. The settlement of a pending suit is a highly favored consideration for a promise to pay money therefor; but the controversy must be in fact settled before the plaintiff can recover upon the promise of the defendant to pay.

2. A mere unexecuted accord confers

[COPYRIGHT, 1897, BY CARL G. JAHN.]

no greater rights upon the plaintiff than upon the defendant.

It cannot be plead by the defendant in bar of the pending suit, nor does any remedy lie upon it for the plaintiff.

3. When the parties to a suit have agreed that the promise of the defendant to pay a sum of money shall be the consideration for the settlement of it, the promise may be enforced, although the suit be not actually dismissed; but when the terms of the settlement contemplate the dismissal of the suit by the plaintiff and the payment of money by the defendant, the plaintiff cannot recover on the promise to pay unless the suit be in fact dismissed.

HOLLISTER, J.

The plaintiff sued defendants and others to set aside the will of her brother, William C. Bare. Pending the suit, Sarah A. Bare, the mother of plaintiff, died, leaving a will in which was a provision for plaintiff, on the condition that she dismiss the suit within 30 days after her mother's death, which occurred May 31st, 1896.

Negotiations looking to a settlement of the suit were begun by the attorney for the plaintiff, who, on June 26, invited a proposition to that end from the defendants. Their attorney declined the next day to make a proposition, but intimated a willingness to entertain propositions from the plaintiff.

Thereupon, plaintiff's attorney, on June 29th, writes: "Mrs. Bloomer will dismiss the petition to set aside her brother's will and will accept the provisions of her mother's will, upon condition, "Of the payment to her of a certain sum of money. $25,000.00 to be paid in cash within a reasonable time to be agreed upon, and the balance to be paid upon the final settlement of her mother's estate."

Defendants' counsel by letter of June 30, rejected this offer and rejoined that his clients were: "Willing to do this: Mrs. Bloomer to dismiss at her cost the suit contesting her brother's will, and make no contest against her mother's will, and to receive either $40,000.00 out of her mother's estate as soon as the same can be settled." Then follows an alternative proposition of the conveyance of the homestead and ten thousand dollars cash.

Plaintiff's counsel declined and proposed to "settle the whole controversy for $50,000.00, one-half to be paid in cash, within a reasonable time to be agreed upon, and the other half to be paid in the regular way under the distribution of Mrs. Bare's estate, the suit now pending to be dismissed without record, each party paying his own costs."

On the same day defendants' counsel answered, proposing a modification, if his clients, who were away, would as

sent thereto: "Our clients pay Mrs. Bloomer $50,000.00.—$25,000 to be paid within, say three months, and the remainder to be paid within eighteen months. For this she will execute a release in full of all interest in her mother's estate, and dismiss the pending suit contesting the will of her brother, each party paying one-half the costs in that case."

July 1st, counsel for defendants writes that the best he can get his clients to agree to, is to give Mrs. Bloomer $40,000.00 cash. * * *. "She to dismiss the pending suit contesting her brother's will, and to execute a release of all interest she claims in her mother's estate."

July 2nd, counsel for plaintiff writes: "Mrs. Bloomer will accept $45,000.00 in cash in full settlement of all claims against both estates." July 7, the answer came, that the defendants were unwilling to increase their offer of $42,500.00 cash, with notice that they were about to leave the city the following day, for the summer.

This proposition was declined the same day and reference made to plaintiff's letter of July 2nd, with the request that the bearer be told whether the proposition in that letter was accepted or declined.

July 8th, defendants' counsel propose the sum of $43,750.00.

Plaintiff's counsel answer, July 9th: "Your proposition of yesterday offering $43,750.00 in cash, is accepted."

The same day defendants' counsel writes that he had telegraphed his clients to know at what time the money could be paid, adding: "There may be a delay of two or three weeks, owing to the absence of one of our clients. But suppose this delay will not be material." Further letters from the same side followed, showing reasons for delay, to which plaintiff's counsel responded, July 13th: "Thirty days is not what I understand as spot cash. Of course I am wiling to close the matter up in thirty days, but upon the basis of a spot cash transaction."

Here the matter rested until August 11th. Plaintiff's counsel writes to defendants' counsel, calling attention to the fact that 33 days have passed since "our agreement," and saying that the writer was going away on Friday, and wished the money paid, and the affair closed up before leaving.

Defendants' counsel was out of the city. Plaintiff's counsel left the city and returned in a few days and again went away. In the meantime there was no answer to the letter of August 11th.

On October 12th, defendants' counsel writes: "Enclosed herewith, please find release to be signed by Mrs. Bloomer * * *. Also an entry (of dismissal of the suit), which I would like you to endorse. * * *. I would like to

have your check for one half of the costs. I shall then be ready to close the matter up, as I have the check in my possession for that purpose."

Counsel for plaintiff rejoins October 13th, saying, that he had inserted in the releases: "With interest from July 9th, 1896," and that he was prepared to deliver them and pay one half of the costs, and that he figured the amount of interest at $667.82," and asking when it was desired that he go to the office of defendants' counsel, "and receive a check and deliver these papers."

The response to this letter expressed surprise that interest was demanded, and states that the defendants are unwilling to pay more than $43,750.00. Plaintiff then threatened suit. Further correspondence ensued, which ended with defendants' counsel's letter of October 15th, in which he offered to pay $43,750.00 in full settlement, and on failure of plaintiff to accept by noon of the following day, she would be remitted to all rights she had at the institution of the negotiations. Thereupon plaintiff brings this suit to collect $43,750.00, with interest from July 9th, 1896.

The plaintiff bases her suit on an agreement of compromise and settlement which she seeks to enforce.

The defendants contend, that the agreement was but a mere unexecuted accord, and that there was no consideration passing to them in contemplation but the performance itself by plaintiff of her part of the accord, to wit:—the dismissal of her suit and delivery of the releases; that the parties were stipulating one for money, and the other for a dismissal of the suit. Hence, the terms of the accord, could not be considered in such a way as to entitle either party to sue upon it as an independent agreement until that party had done all it was agreed should be done. In no event, therefore, could plaintiff sue until she had dismissed her suit and tendered releases. Not having done so, it is claimed by defendants, that they had the right to withdraw at any time before the plaintiff actually complied with the agreement.

Whether an enforceable contract was entered into by the parties, depends upon this correspondence, the circumstances surrounding the parties, and the object sought to be attained by each. The vexed question, (Parsons on Cont., 441,) whether or not a promise to settle an unfounded claim, known to be such by the plaintiff, can be enforced, does not arise in this case, for it is conceded that the suit to set aside the will of William C. Bare, was at least brought in good faith.

It is the policy of the law to encourage the settlement of disputes and prevent litigation. Hence, an agreement not to sue or to settle a pending suit forms a

highly favored consideration for a promise to pay money. Parsons on Cont., 439-449; Longridge v. Dorville, 5 B. & Ald., 117; Callisher v. Bishoffsheim, L. R. 5 Q. B., 449, and many other cases cited herein, and the defendants concede the proposition.

It becomes a mere question of contract. Given an admissible subject matter and a consideration, which, "Is something of some value in the eye of the law moving from the plaintiff," (Thomas v. Thomas, 2 Q. B., 851,) there is no difficulty in enforcing plaintiff's rights as in other contracts. The reports are full of cases where such agreements have been enforced: In Flannagan v. Kilcome, 58 N. H., 445, the consideration for the promise was the discontinuance of the suit. In McClure v. McClure, 100 Cal., 339, the dismissal of the suit was the consideration. In Skeate v. Beall, 11 Ad. & Ell., 983, the plaintiff having distrained for rent, withdrew the distress on defendants' agreement to pay arrears, and in default plaintiff might then take steps to recover the arrears. Lord Denman, C. J., said: "As a consideration for the agreement, the plaintiff forewent the benefit of the immediate security and payment of the whole rent, and the defendant gained the immediate withdrawal of the distress."

Callisher v. Bischoffsheim, supra. is an illustration of a valid promise given on consideration of plaintiff's forbearance to sue. Further illustration may be found in Stoddard v. Mix, 14 Conn., 12; Okeson v. Barclay, 2 Pen. & W., 531; Clark v. Turnhill, 47 N. J. L., 265; French v. French, 84 Iowa, 655; Livingstone v. Dugan, 20 Mo.. 102; White Lead Company v. Kinlin, 66 N. W., 536; Wilkinson v. Byers, 1 A. & E., 106; Phillips v. Pullen, 50 N. J. L., 439; Sweitzer v. Heasly, 13 Ind. App., 567; Frank v. Heaton, 56 Ill. App., 227; Stewart v. Ahrensfeldt, 4 Denio, 489; Wharton on Cont., 533; Pollock on Cont., 181, 182; Anson on Cont., 75, 76, 77; Beach Mod. Law Cont., 170, 174, 175, 177.

A perusal of these cases will demonstrate that the promisor had received that for which he had stipulated, be it forbearance to sue, discontinuance of a suit, dismissal of a suit or what not. Considerations of this kind being valuable, in contemplation of law, and having actually moved from the plaintiff, of course the defendants' agreement based on them became enforceable under the law of contracts. The plaintiff in each case had done what the parties contemplated he should do. The matter in dispute in each case was in fact settled.

A promise too, may become the consideration for another promise, but the promise must be concurrent and both parties bound. Nott v. Johnson, 7 Ohio St., 270; Beach on Mod. Law Cont., 178,

n. 1 and 2. In one class of cases, the doing of something by the plaintiff forms the consideration for the promise, in the other, the promise to do something is what is given for the other promise. The distinction between the two classes of cases is well illustrated by Flockton v. Hall, 14 Q. B., 380, affirmed in 16 Q. B., 1039. In that case, the cause of action was for infringement of a patent. Plea: That it had been agreed that certain things should be done by both parties, and that, "This action and the causes of action included in the same should be settled, satisfied, discharged and terminated by the agreement before mentioned." Defendant averred that the certain things had been done, and that they had always been ready to perform the agreement, etc. The averment was held bad, Coleridge, J., saying: "It is allowed,—indeed it could not be disputed that a plea of accord without satisfaction is bad. Now, there may be two kinds of accord: the making of the agreement itself may be what is stipulated for, or the doing of the things mentioned in the agreement. In the latter case, the plea, as is admitted, ought to aver that the things have been done, and the agreement without that affords no answer. Where the making of the agreement itself, is the thing looked to, the plea must aver that it has been accepted in satisfaction."

In Allen v. Harris, 2 Lord Raymond's Rep., 122, it is said:" If arbitrement be pleaded with mutual promises to perform it, though the party has not performed his part who brings the action, yet he shall maintain his action, because an arbitrement is like a judgment, and the party may have his remedy upon it, but upon accord no remedy lies, and the books are so numerous that an accord ought to be executed that it is impossible to overthrow all the books."

In Lynn v. Bruce, 2 H. Black, 317, Allen v. Harris was declared to be rightly decided upon principle: "*Interest rei publicae ut sit finis litium;* accord executed is satisfaction; accord executory is only substituting one cause of action for another, which might go on to any extent." These cases are cited and followed in Russell v. Lytle, 6 Wend., 390, which, with Allen v. Harris, is cited and followed by Grimke, J., in Frost v. Johnson, 8 Ohio St., 393 who says at p. 395: "An accord not executed is no bar to a pre-existing demand, but if executed by delivering a collateral thing, which is agreed upon to be accepted as a satisfaction, it is a bar."

In Kromer v. Heim, 75 N. Y., 574, it was held, that a part execution of an accord, and tender of performance of the residue is insufficient. Andrews, J., said: "The doctrine which has sometimes been asserted that mutual promises, which give a right of action may

operate and are good as an accord and satisfaction of a prior obligation, must, in this state, be taken with the qualification that the intent was to accept the new promise as a satisfaction of a prior obligation. When the performance of the new promise was the thing to be received in satisfaction, then, until performance, there is no complete accord, and the original obligation remains in full force.''

And in Hern v. Kiehl, 38 Penn. St., 147, it is said: "The plea must allege that the matter was accepted in satisfaction. Mere readiness to perform the accord, or tender of performance or even a part performance, and readiness to perform the rest will not do.''

Counsel for plaintiff concedes the proposition that the accord in order to constitute a bar, must be executed; that there must be satisfaction, but claims, nevertheless, that suit may be maintained on an accord with mutual promises to perform. There is authority for this contention.

"An accord with mutual promises to perform is good, though the thing be not performed at the time of action, for the party has a remedy to compel the performance." Com. Dig. Accord, B. 4, and this is cited in Cartwright v. Cook, 3 Barn. & Adol., 701. But these authorities are effectually disposed of by Grimke, J., in Frost v. Johnson, supra, at p. 396, who says that this doctrine, "Rests upon the single dictum of Comyn, and is contradicted by the general current of the authorities." This statement of Comyn, in the light of the authorities, and the use of the word "arbitrement" in Allen v. Harris, supra, must mean that where the according parties choose to constitute mutual promises themselves, the satisfaction of the accord, that the new agreement may be enforced, because it takes the place of the original respective right and liability. In that sense, the mutual promises are good. The parties in such case are contracting for promises in settlement. Therefore, promises settle the controversy. In other words, there is accord and satisfaction. "It is the promise," says Mr. Wald," and not performance thereof, which is the consideration of the compromise." Wald's Pollock on Cont., 176, n., citing Matthews v. Meek, 23 Ohio St., 272-292; Philpot v. Gruninger, 14 Wall., 570.

Flegall v. Hoover, 156 Pa. St., 276, affords illustration of the new contract taking the place of the old. The defendant, the owner of timber lands, contracted with plaintiff for cutting timber. Defendant claimed the right to rescind for breach of contract, and took possession of the land by force. Plaintiff denying the breach, re-occupied by force, whereupon the parties came together, agreed upon a settlement, put its terms in writing, which was signed by both, and partly carried out. It was held, Mitchell, J., delivering the opinion: "That the agreement was not an accord, but a compromise, and is as binding as any other contract. * * *. All questions of defendant's previously asserted right to rescind the first contract, and the reasons for it, and of the value of the improvements are irrelevant. The parties have made a final adjustment of all these matters, and the original contract of 1891, is of no further efficacy except as a guide in determining how much was due under it for the logs and bark mentioned in the agreement of 1892." It is clear, that in this case the parties intended that the new contract itself, should be a settlement of the old. The same principle, though not clearly stated, is found in French v. French, supra; Schaben v. Running, 74 Iowa, 102. In Coffey v. Emigh, 15 Col., 184, there was an agreement in writing, to settle disputed mining claims growing out of veins of ore crossing each other. The parties actually entered into and took possession of their several and separate portions as described in the agreement. In an action for trespass, the agreement was enforced on the ground that the controversies were in fact settled by the agreement; and it admits of no doubt that the parties so intended. Specific performance was decreed in Weed v. Terry, Doug., 344, where the parties claiming, under conflicting titles, agreed by parole to settle the controversy by appointing an arbitrator to appraise and divide the property. The division was in fact made, was agreed by Terry to be fair, and was partly executed by the plaintiff. Terry refused to make a deed, but was compelled to do so by decree in equity.

The doctrine, that accord without satisfaction is no bar to a pending suit, does not present a mere arbitrary rule of law. The reason for it is clearly put by Eyre, J., in Lynn v. Bruce, supra. Says he: "It was argued according to the cases in Roll, Abr., that an accord executory is no bar, because no remedy lies for it for the plaintiff. Perhaps it would be a better way of putting the argument to say, that no remedy lies for it for the plaintiff, because it is no bar." See also Chitty v. Contracts, vol. 2, p. 1124, (11 Ed.); Leake's Law of Cont., 3rd Ed., 757, 758.

It would be strange indeed, if the law did not permit a defendant to plead an accord in defense of an action, and yet gave the plaintiff the right either to proceed in his action or sue on the accord, while the action which had been settled by the accord was still pending. The law is not so generous to the plaintiff. If he has done all that was to be done by him, under the terms of the agreement, he may sue on the agreement,

otherwise, not. If he was to receive money as the consideration of the settlement or dismissal of his action, the action must be dismissed before he can recover the money.

Babcock v. Hawkins, 23 Vet., 561, is in point. Among many things said by Redfield, J., in that case, which are pertinent, the following is especially apt: "The accord is sufficiently executed when all is done which the party agrees to accept in satisfaction of the pre-existing obligation. This is ordinarily a matter of intention, and should be evidenced by some express agreement to that effect, or by some unequivocal act evidencing such a purpose."

In Hosler v. Hersch, 151 Pa. St., 415, suit was brought on two promissory notes. The defense was, that it had been agreed between the plaintiff and defendant, that certain payments should be made by the defendant of cash, within fifteen days, and in securities in one year, and that the defendant was to pay the plaintiff's attorneys' fee. There is much in that opinion that fits the case under discussion. Among other things, the court say: "There is an obvious distinction between the engagement to accept a promise and satisfaction, and an agreement requiring performance of the promise. If the promise itself, and not the performance, is accepted in satisfaction, this is a good accord and satisfaction without performance. The agreement relied on in this case will not bear that construction. * * *. The agreement was not to accept defendant's promise in lieu of the notes but the specified sums in cash and approved securities. It contemplated the performance of the promise, and was therefore executory. The tender of the performance, though made promptly and in good faith, was not satisfaction."

See also, Southern National Bank of New York v. Curtis, 36 S. W. Rep., 911, wherein, the accord not having been executed by the defendant, the plaintiff withdrew from it and insisted upon his judgment; Yazoo, etc. Railroad Co. v. Fulton, 71 Miss., 385; Herman v. Orcutt, 152 Mass., 405; Carpenter v. Chicago, etc. Railway Co., 64 N. W., 1120.

That the plaintiff is in no better position than the defendant through a mere accord is further shown by Brennan v. Ostrander, 50 N. Y. Sup. Ct., 426. The action was to recover $900.00, claimed to be the amount agreed upon in settlement and compromise of a disputed claim against defendant for the death of plaintiff's child by falling from defendant's fire escape. In denying the plaintiff's right of action, the court say: "In order to maintain an action on a new promise there must be a consideration, and it is without consideration unless the old obligation was satisfied, and the new one accepted in its place."

Panzerbeiter v. Waydell, 21 Hun., 161, is much like the case under discussion. Plaintiff had a doubtful claim in suit. It was agreed that defendant should pay him $150.00 for a consent of discontinuance and full settlement. Plaintiff tendered his consent of discontinuance, together with the release. The defendant refused to pay, and action was brought on the new promise. It was held to be an accord executory, and that as the promise to discontinue was not binding on the plaintiff, the new promise was without consideration, and the compromise should have been dismissed. Barrett, J., said: "In the case of mutual and concurrent promises, there must be reciprocity of obligation."

In Reives v. Hearn, 1 M. & W., 323, the plaintiff had a claim against defendant, a tailor. The parties agreed that defendant should discharge the debt by making a suit of clothes for plaintiff's servant and pay the balance in cash. Suit on the agreement: plea, the statute of limitations. It was held that the agreement was only an agreement for an accord, and did not extinguish the original debt, which, therefore, was barred by the statute of limitations.

The plaintiff claims that the suit and controversy were settled by her agreement to dismiss and release, and defendant's promise to pay. But there is nothing to show that the parties were dealing in promises. There was nothing for plaintiff to do but dismiss the suit and tender the releases: no action was required of defendants but to pay the money. If it be true that the parties substituted a new agreement for the old controversy, why has not the suit been dismissed? The plaintiff seeks to enjoin an agreement and yet retains the consideration which should pass from her. There is no settlement. The suit is still pending; this in turn may be settled in a similar manner, and so ad infinitum without reaching the end of litigation so favored in the law.

A decision of the case should not conclude without reference to the case of Very v. Levy, 13 How., 345, in which language of Mr. Justice Curtis, would seem to do away entirely with the doctrine that accord without satisfaction is no bar—says he at page 357: "On the broad principle that what has been agreed to be done shall be considered as done, the court will treat the creditor as if he had acted conscientiously, and accepted in satisfaction what he had agreed to accept, and what was his own fault that he had not received. Indeed, even a court of law * * * will do the same thing," and cites Bradley v. Gregory, 2 Camp., 383. That was a case of composition between a debtor and his creditors, where it was held, that the debtor could not be sued on the original debt although satisfaction in it had not

been made. Lord Ellenborough's language in deciding the case is broader than the facts called for, for it is well settled that cases of composition deeds or agreements form an exception to the general rule. Kromer v. Heim, supra; Good v. Cheeseman, 2 Barn. & Ad., 328; Bagley v. Homan, 3 Bing. N. C., 915, 921; Parsons on Cont., 733, note 1. In this class of cases the new agreement is substituted for the old, the consideration to each creditor being the agreement of the others not to press their individual claims. It cannot be that Mr. Justice Curtis intended to "overthrow all the books." Probably all that he meant to be bound by was that as the action before him was in equity, the court could impose equitable terms, and require the parties to do what had been agreed.

Defendants' moral obligation to carry out their agreement, is not involved in this case. The question touches only their strict legal rights. The code has abolished forms but not substance. That which was an action at law before the code remains so. It is said in Hager v. Reed, 11 Ohio St., 626, 635: "The court is to be regarded as a court of law or of equity, and the petition a declaration or a bill in chancery, according to the nature of the case and the statement and proof of the cause of action presented in the case."

While the subject of plaintiff's suit related to matters testamentary and ordinarily within the jurisdiction of courts of equity, yet the statutory proceeding to contest the validity of a will is substantially like an action at law. The issue must be tried to a jury, Holt v. Lamb, 17 Ohio St., 374, and exceptions as at law may be taken to the rulings and charge of the court, Holman v. Riddle, 8 Ohio St., 384.

Doubtless if an executed settlement had been made, defendant could have pleaded it in bar, or plaintiff could have sued on it, but the agreement of the defendants was executory, and the case involves no equitable considerations.

Judgment for defendants.

Ramsey, Maxwell & Ramsey, for plaintiffs.

Harmon, Colston, Goldsmith & Hoadly, for defendant.